UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KELLI M., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|       v. | )   No. 1:20-cv-01731-DLP-JRS |
| | ) |
| ANDREW M. SAUL, | ) |
| | ) |
|       Defendant. | ) |

## ORDER

Plaintiff Kelli M. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

### I.    PROCEDURAL HISTORY

On February 2, 2017, Kelli filed her application for Title II DIB benefits. (Dkt. 10-5 at 2-5, R. 144-147). Kelli alleged disability resulting from depression and bipolar disorder. (Dkt. 10-6 at 6, R. 166). The Social Security Administration ("SSA") denied Kelli's claim initially on June 5, 2017, (Dkt. 10-3 at 9, R. 73), and on reconsideration on November 22, 2017. (Id. at 18, R. 82). On January 24, 2018, Kelli filed a written request for a hearing, which was granted. (Dkt. 10-4 at 14, R. 95).

On June 26, 2019, Administrative Law Judge ("ALJ") T. Whitaker conducted a hearing, where Kelli and vocational expert Stephanie Archer appeared in person

1

and by phone, respectively. (Dkt. 10-2 at 30, R. 29). On July 9, 2019, ALJ Whitaker issued an unfavorable decision finding that Kelli was not disabled. (Dkt. 10-2 at 14-23, R. 13-22). Kelli appealed the ALJ's decision and, on June 4, 2020, the Appeals Council denied Kelli's request for review, making the ALJ's decision final. (Dkt. 10-2 at 1-3, R. 1-3). Kelli now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB only after she establishes that she is disabled. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial

2

> gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520 (a negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Kelli is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this

substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to h[er] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III. BACKGROUND

#### A. Factual Background

Kelli was fifty-four years old as of her August 19, 2016 alleged onset date. (Dkt. 10-2 at 33, R. 32). She has a high school diploma. (Id.). She has relevant past work history as a cafeteria food service worker. (Dkt. 10-2 at 21, R. 20).

### B. ALJ Decision

In determining whether Kelli qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Kelli was not disabled. (Dkt. 10-2 at 14-23, R. 13-22). At Step One, the ALJ found that Kelli had not engaged in substantial gainful activity since her alleged onset date of August 19, 2016. (Id. at 16, R. 15).

At Step Two, the ALJ found that Kelli suffered from the following severe impairments: major depressive disorder and personality disorder. (Id.). The ALJ also found that Kelli had non-severe impairments of insomnia, headache, hypertension, gastroesophageal reflux disease, scoliosis of the thoracolumbar spine, hyperlipidemia, chest pain, fatty liver, urinary incontinence, and hallux abductovalgus with bunion deformity. (Id.). The ALJ further found that Kelli's allegations of bipolar disorder were insufficient to establish a medically determinable impairment. (Id. at 17, R. 16).

At Step Three, the ALJ found that Kelli's impairments did not meet or medically equal the severity of Listing 12.04 for affective disorders or Listing 12.08 for personality disorders. (Id. at 17, R. 16). As to the "paragraph B" criteria, the ALJ concluded that Kelli has no limitations with respect to understanding, remembering, or applying information, a mild limitation in interacting with others, and moderate limitations with regard to concentrating, persisting, or maintaining pace and adapting or managing herself. (Id. at 17-18, R. 16-17).

After Step Three but before Step Four, the ALJ found that Kelli had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: simple, routine, tangible, and repetitive work in a work environment free of fast-paced production requirements and with only occasional workplace changes. (Dkt. 10-2 at 18, R. 17).

At Step Four, the ALJ concluded that Kelli is not capable of performing her past relevant work as a cafeteria food service worker. (Dkt. 10-2 at 21, R. 20). At Step Five, relying on the vocational expert's testimony, the ALJ determined that, considering Kelli's age, education, work experience, and residual functional capacity, she was capable of adjusting to other work. (Id. at 22, R. 21). The ALJ thus concluded that Kelli was not disabled. (Id. at 23, R. 22).

## IV. ANALYSIS

Kelli challenges the ALJ's decision on two grounds.[1] First, Kelli argues that the ALJ erred by failing to include sufficient corresponding limitations in the RFC evaluation or hypothetical questions to the vocational expert that would accommodate her mild limitation in interacting with others and moderate difficulties in her ability to sustain concentration, persistence, or pace. (Dkt. 14 at 14-21; Dkt. 16 at 1-14). Second, Kelli contends that the ALJ failed to meet the Step Five burden of showing that Kelli can perform occupations that exist in significant numbers. (Dkt. 14 at 21-25; Dkt. 16 at 15-17). The Court will consider these arguments in turn.

---

[1] Kelli's opening brief included three arguments, but, because the first two are interrelated, the Court will address them together.

7

### A. Unsupported RFC and Hypothetical

Kelli argues that the ALJ failed to account for her mild limitations in interacting with others and moderate limitations in concentration, persistence, or pace in the RFC assessment and hypotheticals posed to the vocational expert. (Dkt. 14 at 14-15). Furthermore, Kelli maintains that a functional limitation to "simple, routine, tangible, and repetitive work in a work environment free of fast-paced production requirements and with only occasional work place changes" does not capture her moderate difficulties in maintaining concentration, persistence, and pace. (Dkt. 14 at 17-21; Dkt. 16 at 7-14). To address her mental functional limitations, Kelli proposes that she should be given time off-task and her interactions with others be limited. (Dkt. 14 at 15-16, 21; Dkt. 16 at 2-3, 14). In response, the Commissioner asserts that the ALJ sufficiently accounted for Kelli's mental limitations in formulating the RFC and that the Plaintiff has failed to identify any social interactions or additional concentration-related restrictions that should have been included. (Dkt. 15 at 17-19).

If a claimant "has a medically determinable mental impairment," then the ALJ must document that finding and rate the degree of functional limitation in four broad areas," which include the categories of interacting with others and "concentration, persistence, or pace." *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008) (citing 20 C.F.R. § 404.1520a(c)(3)). The ALJ will rate a claimant's degree of limitation in the four broad areas according to the following five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates

8

a limitation as "none" or "mild," the ALJ will "generally conclude that [a claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities[.]" 20 C.F.R. § 404.1520a(d)(1).

When crafting a claimant's mental RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe." *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); *see also* SSR 96–8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."). Both the RFC assessment and the hypothetical posed to the vocational expert ("VE") must incorporate all of the claimant's limitations supported by the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

In this case, both state agency reviewing physicians found that Kelli had no limitation with respect to understanding, remembering, or applying information or adapting or managing herself, and mild limitations with respect to interacting with others and concentrating, persisting, or maintaining pace. (Dkt. 10-3 at 6, 14, R. 70, 78). The ALJ recognized that the state agency psychologists, who conducted their record reviews in 2017, predated the majority of Kelli's treatment for mental health concerns, and accordingly gave each opinion some weight. (Dkt. 10-2 at 21, R. 20). The ALJ noted that the record had been updated since those opinions were issued,

9

and that Kelli was somewhat more limited than the reviewing psychologists had found. (Id.).

Here, the ALJ found that Kelli's major depressive disorder and personality disorder were severe medically determinable impairments. (Dkt. 10-2 at 16, R. 15). During the "paragraph B" criteria analysis in her opinion at Steps Two and Three, the ALJ found that Kelli's mental impairments caused her to have mild limitations in interacting with others and moderate limitations in concentrating, persisting, and maintaining pace. (Dkt. 10-2 at 17-18, R. 16-17). During the subsequent mental RFC assessment, the ALJ acknowledged that Kelli had documented problems with memory and concentration, along with some medical exams that show memory impairment. (Dkt. 10-2 at 17, R. 16). The ALJ also noted that Kelli's mental health counselor found she had difficulty with relationships with coworkers, difficulty in most relationships with family members, and limited insight. (Id. at 19, R. 18). The ALJ further noted Kelli's ex-husband's report that stated that Kelli had difficulties with sleeping, staying on task, memory, concentration, stress, and changes in routine. (Id. at 21, R. 20). Acknowledging Kelli's mental health limitations, the ALJ crafted a mental RFC limiting Kelli to (a) simple, routine, tangible, and repetitive work, (b) no fast-paced production requirements, and (c) only occasional work place changes. (Id. at 18, R. 17).

### i. Interaction with Others

As noted above, the ALJ found that Kelli has a mild limitation in interacting with others – the RFC, however, contains no limitations for social interaction. The

Commissioner argues that it was intentional for the ALJ to include no limitations as to social interaction, and that the ALJ's summarization of the evidence in the record constituted an analysis sufficient to justify the RFC assessment that did not include limitations for social interaction. (Dkt. 15 at 19).

"While a mild, or even a moderate, limitation in an area of mental functioning does not necessarily prevent an individual from securing gainful employment, the ALJ must still affirmatively evaluate the effect such mild limitations have on the claimant's RFC." *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017) (remanding when ALJ failed to explain why mild limitations in mental functioning did not require RFC limitations) (citing *Sawyer v. Colvin*, 512 F. App'x. 603, 611 (7th Cir. 2013)); *Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011) (citing *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005)).

The Court notes that the ALJ did provide a somewhat thorough summarization of the evidence in the record. In assessing her depression, personality disorder, and insomnia, the ALJ noted that Kelli's psychiatrist found Kelli to be stable on her medication. (Dkt. 10-2 at 20, R. 19). The ALJ also considered Kelli's subjective statements, but found her treatment notes did not support Kelli's claims of debilitating depression. (Id.). The ALJ found:

> With regard to precipitating or aggravating factors, the claimant alleges difficulty with concentration, maintaining pace, and dealing with changes. The undersigned has considered these matters in assessing her residual functional capacity and included appropriate restrictions.

(Dkt. 10-2 at 20, R.19). The ALJ also noted that Kelli was not suffering from any side effects from her medications and that Kelli's mental health treatment notes and objective exams showed improvement with medication. (Id.) She further noted that Kelli had discontinued counseling when her therapist left in mid-2017. (Id. at 21, R. 20). This summarization, however, is not sufficient because it fails to explain how this evidence supports the ALJ's decision to not include any social functioning limitations in the RFC. *See* SSR 96-8p (ALJs required to include a narrative discussion of why symptom-related functional limitations cannot reasonably be accepted as consistent with the medical and other evidence); *Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) (summarizing evidence is not the same as analyzing and explaining it to support a conclusion that the claimant is not disabled); *Mills v. Colvin*, 959 F. Supp. 2d 1079 (N.D. Ill. 2013) (summarizing evidence does not provide logical bridge from evidence to ALJ's conclusion). Although a mild limitation in an area of mental functioning does not necessarily "prevent an individual from functioning 'satisfactorily,'" *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013) (citation omitted), the ALJ is still required to analyze the limitations in light of Plaintiff's other impairments when determining the RFC. *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3 (N.D. Ill. Sept. 7, 2018).

In this case, the ALJ concluded that Kelli has a mild limitation in interacting with others, included no non-exertional limitations in the RFC that would address this limitation, and provided no explanation as to why no limitations were included

in the RFC. The ALJ provided an adequate summary of the evidence in the record, but that summarization included no analysis and, thus, failed to provide a logical bridge from the evidence to the ALJ's conclusion. Thus, the hypothetical to the VE was similarly lacking in support because it is unclear whether the VE was fully apprised of Kelli's limitations, as discussed in more detail below. As such, remand is required on this issue.

> ii. *Concentrating, Persisting, and Maintaining Pace*

Finding moderate limitations in concentration, persistence, and pace, the ALJ limited Kelli "to simple, routine, tangible, and repetitive work in a work environment free of fast-paced production requirements and with only occasional work place changes." (Id. at 18, R. 17). When an ALJ determines that a claimant has moderate difficulties with concentration, persistence, and pace, there must be some logical tie within the decision between the claimant's particular difficulties in these areas and the way the RFC accommodates those difficulties. *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Also, when an ALJ largely relies on a VE's testimony, the VE must be apprised of all of the claimant's limitations. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The most effective way to fully apprise the VE is to include all limitations directly in the hypothetical – gaps in the hypothetical may be acceptable, though, when the record shows that the VE independently reviewed the record or heard testimony directly from the claimant about her limitations. *See Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018). There is no evidence that the VE

13

independently reviewed the record, or that the VE heard the claimant's testimony at the hearing, mainly because the VE's telephone line was disconnected at some point during the hearing and the ALJ did not clarify whether the VE was present for any testimony. (Dkt. 10-2 at 55, R. 54). Thus, the hypothetical question had to fully incorporate all of Kelli's limitations supported by the medical evidence in the record.

In assigning a moderate limitation during the Step Three "paragraph B" analysis, the ALJ acknowledged that Kelli reported problems with memory and concentration, and that even some of her objective medical exams demonstrated issues with memory. (Dkt. 10-2 at 17, R. 16). But there is no explanation in the RFC assessment why a limitation to unskilled[2] tasks with few workplace changes and no fast-paced production requirements will allow Kelli to concentrate and complete them despite her chronic anxiety, depression, insomnia, headaches, fatigue, and crying spells. It appears that the production requirement limitation in the RFC may be designed to assist Kelli's ability to maintain pace throughout the day, but it is still unclear how the limitations to unskilled work and few workplace changes are designed to accommodate Kelli's documented issues with concentration and persistence.

The Commissioner maintains that no error occurred in this case because no doctor's opinion indicated greater limitations than those found by the ALJ. (Dkt. 15 at 18 citing *Dudley v. Berryhill*, 773 F. App'x. 838, 843 (7th Cir. 2019)). While it is

---

[2] The Seventh Circuit has held that the terms "simple, routine, and repetitive tasks" refers to unskilled work. *Varga*, 794 F.3d at 814.

true that this record only contains the medical opinions of the state agency reviewing physicians, the ALJ chose to give those opinions only some weight because they were outdated and did not properly reflect Kelli's mental limitations, unlike the ALJ in *Dudley* who accepted the consultative examiner's opinion and adopted the recommended restrictions. *Dudley*, 773 F. A'ppx at 843.

      Here, the ALJ was aware from the record that Kelli had difficulty in social situations, unexpected crying spells occurring at least once per day, daytime fatigue with frequent napping, good days and bad days, and panic-like symptoms, all of which were attested to by the medical records, a source statement provided by Kelli's ex-husband, and Kelli's testimony at the hearing – what is missing, however, is any indication that the VE was aware of these continuous symptoms that could affect her ability to concentrate, persist, or maintain pace in the workplace.

      The VE was not asked whether she reviewed the record and her telephone line was disconnected from the hearing, leaving the Court to guess whether she was adequately apprised of Kelli's mental health symptoms. Because the Court cannot tell whether the VE was apprised of Kelli's social interaction limitations or specific limitations in concentration or persistence, it is not clear that Kelli could actually adjust to perform other work in the national economy. Kelli has supported her contention that additional mental RFC limitations were warranted with evidence from the record, evidence which may or may not have been considered by the ALJ and the VE. Without such a clarification, the Court cannot confidently say that no error occurred here.

The Commissioner finally argues that even if the ALJ's discussion of Kelli's limitations with concentration, persistence, and pace is flawed, the error is harmless because Kelli did not identify any specific limitations that the ALJ omitted. (Dkt. 15 at 17-18). The doctrine of harmless error applies to administrative decisions when the district court can predict "with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support." *James M. S. v. Kijakazi*, No. 3:20-CV-726-DWD, 2021 WL 3513899, at *5 (S.D. Ill. Aug. 10, 2021) (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)).

Contrary to the Defendant's claim, Plaintiff identified two potential RFC limitations that the ALJ should have considered for concentration, persistence, and pace – time off-task and for unexpected crying spells. (Dkt. 14 at 21). In fact, those limitations are particularly vital to Kelli's case, because of the VE's testimony that an addition of limitations for unscheduled crying spells or five percent time off-task would render a finding that Kelli is disabled. As such, the Court cannot consider the ALJ's failure to be harmless error. *See Daugherty v. Berryhill*, No. 1:18-cv-256, 2019 WL 2083033, at *14 (N.D. Ind. May 13, 2019) (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)) (remand appropriate where ALJ was silent on a case dispositive piece of evidence, "despite the ALJ's duty to acknowledge dispositive evidence"). Additionally, an individual such as Kelli with documented issues in dealing with social situations and interactions with others, especially when she might engage in a crying spell and yell at others, may require RFC

16

limitations as to social interactions. The ALJ may well have decided after reviewing this evidence that no further limitations were warranted based on the record, but she was required to say so. *Passig v. Colvin*, 224 F. Supp. 3d 672, 682 (S.D. Ill. 2016); *Keith R. v. Saul*, No. 19 C 868, 2021 WL 308885, at *4 (N.D. Ill. Jan. 29, 2021) (citing *Lothridge*, 984 F.3d at 1233).

Because the ALJ fails to provide a logical bridge between the evidence and her conclusions, the Court concludes that the ALJ's opinion is not supported by substantial evidence, and this case must be remanded for reconsideration of Kelli's RFC as to concentration, persistence, and maintaining pace.

### B. Step Five Analysis

Kelli next argues that the ALJ's Step Five decision that she could transition to other work in the national economy was not supported by substantial evidence. The Court has already called into question the ALJ's RFC analysis and determined that the case should be remanded for additional consideration as to the RFC. The ALJ's Step Five analysis relies heavily on the RFC analysis; as such, because the Court has already concluded that the ALJ's RFC assessment was flawed, the Court cannot adequately determine whether the Step Five analysis was also lacking. On remand, the Step Five analysis should also be reevaluated.

### V. CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings

pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

    So ORDERED.

Date: 9/17/2021

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email